HARRY HUMPHRIES v. THE STATE.

No. 4044. Decided April 19, 1916.

Rehearing denied June 7, 1916.

**1.—Pandering—Sufficiency of the Evidence.**

Where, upon trial of pandering, the evidence for the State sustained the conviction, there was no reversible error.

**2.—Same—Common Prostitute—Definition of Offense.**

Under the statute defining pandering, it is no defense that because the female who was procured as an inmate for a house of prostitution was before that time a common prostitute, and that therefore defendant was not guilty in soliciting her to go to said house of prostitution. Following Currington v. State, 72 Texas Crim. Rep., 143, and other cases.

**3.—Same—Continuance—Bill of Exceptions—Motion for New Trial—Practice on Appeal.**

Where the testimony upon the hearing of a motion for new trial setting up newly discovered evidence was not preserved either by bill of exceptions or statement of facts in the record, the same could not be considered on appeal, and it must be presumed that the action of the court below in overruling the motion was correct. Following Graham v. State, 73 Texas Crim. Rep., 28, and other cases.

**4.—Same—Motion for New Trial—Amendment—Practice in District Court.**

Where defendant's motion for new trial set up newly discovered evidence and was overruled by the court on that ground, and defendant thereupon contended that the court upon trial excluded certain material testimony, without withdrawing his announcement of ready on his original motion for new trial, or otherwise seeking to postpone the hearing to amend his motion, there was no error in the court's refusal to permit defendant to file his supplemental motion for new trial; besides the proffered testimony was of an impeaching character only.

**5.—Same—Notice of Appeal—Jurisdiction—Motion for New Trial.**

Where the court below overruled defendant's motion for a new trial and defendant was sentenced and gave notice of appeal, the trial court thereby lost jurisdiction of the case; the defendant having entered into a recognizance and was discharged from custody, and there was no error, when several days thereafter, the court refused to permit appellant to file another motion for new trial without even offering to withdraw his notice of appeal and delivering himself up into the custody of the sheriff. Following Tores v. State, 74 Texas Crim. Rep., 37, and other cases.

Appeal from the District Court of Galveston. Tried below before the Hon. Clay S. Briggs.

Appeal from a conviction of pandering; penalty, five years imprisonment in the penitentiary

The opinion states the case.

*Marsene Johnson, Aubry Fuller, Elmo Johnson,* and *Roy Johnson,* for appellant.—On question of insufficiency of indictment: Milliken v. City Council, 54 Texas, 388.

On question of refusal to permit defendant to file supplemental motion for new trial: Fricke v. State, 11 Texas Crim. App., 6.

C. C. McDonald, Assistant Attorney General, Charles S. Theobald, County Attorney, W. E. Cranford, and M. J. Levy, for the State.—On question of sufficiency of indictment: Jones v. State, 162 S. W. Rep., 1142; Stevens v. State, 68 Texas Crim. Rep., 282.

On question of impeaching testimony as newly discovered evidence: White v. State, 177 S. W. Rep., 93; Merkel v. State, 171 S. W. Rep., 738; Raleigh v. State, 168 S. W. Rep., 1050.

On question of refusing to permit filing of supplemental motion on account of newly discovered evidence: Butts v. State, 35 Texas Crim. Rep., 364

PRENDERGAST, Presiding Judge.—Appellant was convicted of pandering, and assessed the lowest punishment.

Appellant contends that the evidence is wholly insufficient to sustain the conviction. He frankly concedes that the law is, that if the evidence for the State in its most favorable aspect sustained the verdict, that was a question for the jury and the lower court, and this court can not lawfully reverse on that ground, but as stated, he contends that the evidence for the State in its more favorable aspect does not sustain the verdict.

We have carefully read and studied the statement of facts. In our opinion the evidence as a whole fully sustains the conviction, and in fact the evidence sustaining the conviction preponderated against appellant.

We will not undertake to state all the testimony, nor that which if believed might have resulted in appellant's acquittal, but we will state the substance of the material testimony sustaining the conviction.

It was shown by her own and other testimony that Marie Seifert, for some time prior to and at the time of the commission of this offense, was a common prostitute; that she was then located and engaged in that business in Houston. That Julia Peebles, in effect, was at that time also a prostitute and was the proprietress and ran and operated a house of prostitution in Galveston, and that appellant lived with her in that house at that time, and had for some time prior thereto, and subsequently. That after he was indicted in this case, he married Julia Peebles, probably to prevent her testifying against him. At any rate, she did not testify at all in this case. Marie Seifert testified that she first met appellant in a drug store in Houston, and was there introduced to and had a conversation with him. That he asked her to go to Galveston and stop at the Albion Hotel, which was the whore house shown to have been run by Julia Peebles, his then paramour. That he told her she could do better over there than she had been doing in Houston; that she could make more money there in Galveston in her business, that of a common prostitute. Upon this solicitation by him of her to go to Galveston and become an inmate of said house there, she told him she would see about it. That about a week later he went out to the house of prostitution of which she was then an inmate in Houston and saw her again about going to Galveston, and

asked her if she would not go to Galveston to said house there, and she told him she would. He told her to go to that particular house in Galveston. That he then gave her $3 to buy her transportation and go to Galveston on, and that therewith she bought a ticket to Galveston and went there and became an inmate of said house in Galveston, and there plied her vocation for some time. That she went from the house of prostitution in Houston, where this last solicitation by appellant of her was made, to the Interurban Railroad station in Houston. That appellant himself did not at that particular time return to Galveston, but did return the next day. That she went to Galveston on this interurban train at the time in company with another man. She then showed that appellant lived in said house of prostitution in Galveston with Miss Peebles, his paramour. That he stayed there day and night. It was further shown that she and each of the other prostitutes, there being some two or three others, who stayed at said house in Galveston and plied their vocation, paid to Miss Peebles, the proprietress, $5 a week for their board and room, and that, in addition, each time any man visited them and did business with them, each of the inmates had to pay, and did pay, to Miss Peebles $1 for each man. It was further shown that after Marie Seifert and the other prostitutes had been in said house in Galveston for some three months, Miss Peebles became enraged at her and burned up her clothes and put her out of the house because she claimed that Marie had permitted her paramour (appellant) to have intercourse with her, and that she then and thereupon became very much outraged and very hostile to both Julia Peebles and appellant, because of the burning of her clothes and her being put out of the house. As stated, it is unnecessary to state appellant's testimony denying that of Miss Marie Seifert, but Marie Seifert's testimony was corroborated in the material points by the testimony of others and some of the material circumstances.

Appellant contends, in substance, that, because Marie Seifert was a common prostitute before, and was in a house of prostitution in Houston at the time he solicited her and induced her to go from there to said house in Galveston, he was not guilty, because, as he contends, the law was not intended to embrace a person for inducing a common prostitute of any one house to leave that house and go to another house of prostitution in another county. That it was intended to protect the innocent and virtuous female. His contention is not the law. What he is shown to have done is clearly embraced within the statute, and it is just as much against the law for a person to procure a whore to go into and become an inmate of a house of prostitution, even though she has prior thereto been in another house in another county in the same business, as it is to get a virtuous woman to do so. The statute is: "Any person who shall procure, or attempt to procure, or be concerned in procuring, with or without her consent, a female inmate for a house of prostitution," etc., "shall be guilty of pandering." It makes no difference whether the female at the time is a virtuous woman or a

prostitute. Clearly what appellant did is embraced within the very terms of the statute, and we have no right or power legally to so construe the statute as to hold that it means the reverse of what it says. We have already held that, under this statute, it makes no difference whether the woman was virtuous or not. Currington v. State, 72 Texas Crim. Rep., 143. Other cases are to the same effect.

Appellant was indicted July 27, 1915. It seems that he continued the case at the first term at which the case was called for trial. His trial and conviction were had on December 17, 1915. Within two days he filed a motion for a new trial. On December 27, 1915, he procured leave of the court to file an amended motion for new trial, and on that day filed such amended motion, to which he attached the affidavits of a number of persons of Houston, who swore that said Marie Seifert was a common prostitute and her reputation for truth and veracity was bad, and claimed that their testimony was newly discovered, setting up these matters in his said amended motion. This motion came on to be heard by the trial judge on January 11, 1916, at which time both parties announced ready therein, and the appellant offered, and the court heard, certain testimony on said hearing, which in no way by bill of exceptions or statement of facts is shown in this record. Under a uniform holding of this court we must, and do, presume that the court's action after hearing said evidence was correct. Graham v. State, 73 Texas Crim. Rep., 28; Ethridge v. State, 74 Texas Crim. Rep., 635, and cases cited therein. However, on that hearing appellant offered some other witnesses, who would swear to other claimed admissions by the State's witness Marie Seifert, showing her hostility to appellant's said wife, which the court excluded on the State's objections, claiming, which was true, that it was not embraced in his motion for a new trial. Appellant then sought, without withdrawing his announcement of ready on his motion, or otherwise seeking to postpone the hearing, to then file an additional motion or supplemental motion to his amended motion for a new trial, pleading these matters. Upon the State's objection the court in his discretion declined to permit him at that late date under the circumstances to file a supplemental motion for a new trial. The court, in approving his bills on the subject, qualified them by stating that no excuse was shown by him why he had not included such allegations in his amended motion, he having had ample time and opportunity to do so, and that the claimed testimony was simply a cumulative attack on said State's witness. Taking appellant's bills as qualified by the court, which must be done, none of them show any error. The trial judge did not abuse his discretion in refusing to allow appellant at that late date and under the circumstances to file a supplemental amended motion. Besides, the testimony, even if admitted, would not have entitled him to a new trial. This court all the time has held that even a motion for a continuance will not be granted for the defendant to obtain witnesses to impeach the State's witnesses, much less grant a new trial for that purpose.

The court overruled his motion for a new trial on January 11, 1916, at which time he gave notice of appeal to this court, which was duly then and there entered, and on the same day he was sentenced, and at the same time he entered into a recognizance and was discharged from custody. Thereupon, under the statute and uniform decisions of this court, the District Court lost jurisdiction, and this court obtained it, of said case. Therefore, the court did not err in several days thereafter refusing to permit him to file and the court to hear another motion for a new trial. He at that time, not even offering to withdraw his notice of appeal nor delivering himself into the custody of the sheriff. The court in qualifying his bill, states that at the time when said last motion was presented to him, it was after the overruling of his other motion for a new trial, and he was out on bond; that he never withdrew said notice of appeal or surrendered himself, and that the District Court had lost jurisdiction. The court thereupon declined to consider such so-called supplemental motion further than to read it and refuse to allow it to be filed, and further stated that it showed no diligence and no excuse for not being sooner presented. The court's action was correct. Tores v. State, 74 Texas Crim. Rep., 37, and cases there cited; Walker v. State, 78 Texas Crim. Rep., 237, 181 S. W. Rep., 191.

No error being shown, the judgment will be affirmed.

*Affirmed.*

[Rehearing denied June 7, 1916.—Reporter.]